**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **CELLSPIN SOFT, INC.,** | |
| **Plaintiff,** | **Civil Action No: 2:25-cv-00683-JRG-RSP** |
| **v.** | **PATENT CASE** |
| **FOSSIL GROUP, INC., et al.,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

**DEFENDANTS' RULE 11 MOTION FOR SANCTIONS**

# TABLE OF CONTENTS


I. BACKGROUND ........ 1

A. *Cellspin I*'s Scope Eclipses The Scope In This Lawsuit ........ 1

B. The NDCA District Court Repeatedly Reprimanded Cellspin And Its Counsel For Misconduct During *Cellspin I* ........ 4

C. *Cellspin I* Resulted In Summary Judgment Of Non-Infringement On Multiple Independent Grounds ........ 6

D. Cellspin's Underhanded Tactics Continued After Summary Judgment ........ 7

E. Federal Circuit Affirmed Summary Judgment ........ 8

F. Fossil Attempted To Resolve This Matter Amicably ........ 8

II. LEGAL STANDARD ........ 9

A. Rule 11 Standard ........ 9

B. Factors In Determining Form Of Sanctions ........ 9

III. ARGUMENT ........ 10

A. *Cellspin I* Precludes This Lawsuit And Cellspin Knows It ........ 10

1. The Five New Products Are Not Meaningfully Different From Those Found Non-Infringing In *Cellspin I* ........ 11

2. The "OAuth" Theory Is Neither Material Nor New ........ 12

B. The Pattern Of Misconduct By Cellspin And Its Counsel Warrants Sanctions ........ 13

C. Sanctions Should Remedy Harm And Deter Future Misconduct ........ 14

IV. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Black & Decker, Inc. v. Robert Bosch Tool Corp.*,
500 F. Supp. 2d 864 (N.D. Ill. 2007) ........................................ 11

*Bullard v. Chrysler Corp.*,
925 F. Supp. 1180 (E.D. Tex. 1996) ........................................ 10, 14

*Cellspin*
*I*, Dkt. No. 258, Order Regarding Expert Substitution ........................................ 4

*Cellspin*
*I*, Dkt. No. 269, Order Denying Motion to Continue ........................................ 5

*Cellspin Soft, Inc. v. Fossil Group, Inc.*,
No. 4:17-cv-05933-YGR (N.D. Cal. 2017) ........................................ *passim*

*Cellspin Soft, Inc. v. Nike, Inc.*,
Case No. 2:22-cv-00455 ........................................ 7

*Cellspin v. Fitbit et al.*,
4:17-cv-05933-YGR, Dkt. No. 358, Order Denying Recusal ........................................ 7

*Cellspin v. Fitbit et al.*,
Case No. 17-cv-05928, Dkt. No. 366 ........................................ 7

*Cellspin v. Fitbit et al.*,
Case No. 4:17-cv-05928-YGR, Dkt. No. 239, Order ........................................ 4

*Cellspin v. Garmin*,
Case No. 4:17-cv-05934-YGR, Dkt. No. 190, Order Denying Motion to Strike ........................................ 5

*Cellspin v. Nike*,
Case No. 4:17-cv-05931-YGR, Dkt. No. 225 ........................................ 4, 5

*Cellspin v. Nike*,
Case No. 4:23-cv-05340-YGR, Dkt. No. 79 ........................................ 7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................ 12

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ........................................ 9

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990)....................14, 15

*Escamilla v. M2 Tech., Inc.*,
657 F. App'x 318 (5th Cir. 2016)....................10

*Foster v. Hallco Mfg. Co.*,
947 F.2d 469 (Fed. Cir. 1991)....................11

*Goodyear Tire and Rubber Co. v. Haeger*,
581 U.S. 101 (2017)....................9

*Jennings v. Joshua Indep. Sch. Dist.*,
948 F.2d 194 (5th Cir. 1991)....................15

*Quantum Technology Innovations, LLC v. Valve Corporation et al.*,
2:23-cv-00425-JRG (E.D. Tex. 2023)....................13

*Symbology Innovations, LLC v. Valve Corporation*,
2:23-cv-00419-JRG (E.D. Tex. 2023)....................13

*Symbology v. Valve*, *Quantum v. Valve*,
Case No. 2:23-cv-00425-JRG, Dkt. No. 75, Memo of Opinion and Order....................14

*Zoll Medical Corp. v. Philips Electronics North America Corp.*,
2014 WL 1428146 (D. Mass. 2014)....................12

**Other Authorities**

FED. R. CIV. P. 11....................8, 9, 10, 14, 15

Cellspin already asserted the same patents against Fossil and lost; twice at the district court level and once, finally, at the Federal Circuit. This is a rare case where sanctions are not only justified and necessary, but also overdue, as Cellspin's vexatious campaign of patent litigation now spans multiple cases and jurisdictions. Despite having fully litigated and lost, Cellspin improperly filed a new suit seeking to relitigate the same patents, targeting identical product features, and recycling the same infringement theories against products that were all available during the original litigation. This conduct is barred by well-established doctrines of claim preclusion, issue preclusion, and the *Kessler* doctrine. Cellspin and its counsel know this and yet insist on pursuing claims that are clearly baseless and meant only to harass Fossil.

This frivolous lawsuit also reflects a broader pattern of litigation misconduct. In the prior *Cellspin* case, the NDCA repeatedly reprimanded Cellspin and its counsel for "obstructive" and "inappropriate" conduct and warned that "any future misconduct [would be] sanctionable." Cellspin's lead counsel in this case was also sanctioned earlier this year by this Court in another matter for asserting unsupported legal claims and alleging known falsehoods. Evidently, these admonishments did not deter him or his client from filing another meritless lawsuit.

No attorney acting in good faith would have filed this suit. Fossil therefore respectfully requests that the Court impose appropriate sanctions to compensate Fossil and deter further abuse, including a dismissal of Cellspin's claims and an award of Fossil's fees incurred defending against them, along with any other relief the Court may deem appropriate.

## I. BACKGROUND

### A. *Cellspin I*'s Scope Eclipses The Scope In This Lawsuit

Cellspin had a full and fair opportunity to litigate its infringement claims against Fossil's wearable products in *Cellspin Soft, Inc. v. Fossil Group, Inc.*, No. 4:17-cv-05933-YGR (N.D. Cal. 2017) ("*Cellspin I*"), which was one of 13 lawsuits Cellspin filed on October 16, 2017, against

various consumer electronic companies in the Northern District of California.[1] The current case mirrors *Cellspin I* in all material aspects:

- **Same parties**: Plaintiff Cellspin Soft Inc. and Defendant Fossil Group, Inc. are identical to the parties in *Cellspin I*; Defendant Fossil Stores I is "a wholly owned subsidiary of Fossil Group, Inc." (Dkt. No. 1 (Complaint) ¶ 4.)
- **Same counsel**: Cellspin's counsel in this case, Garteiser Honea, also represented Cellspin in *Cellspin I*. *See* Ex. 1 (*Cellspin I*, Dkt. No. 150, Garteiser NOA); Dkt. No. 1 (Complaint) at 25 (signed by Mr. Garteiser). Fossil was also represented by Fish & Richardson P.C. in *Cellspin I*.
- **Same patents**: Cellspin again asserts U.S. Patent Nos. 8,738,794, 8,892,752, and 9,749,847. (*See* Dkt. No. 1 (Complaint) ¶¶ 17-19, Exs. A-C.)
- **Same accused features**: Cellspin previously targeted 68 Fossil smartwatches for their Bluetooth-enabled data transfer functionality. Most of the Fossil products accused in *Cellspin I* were targeted for their implementation of the Wear OS functionality provided by Google. Cellspin now accuses the same data transfer features in five "newer"[2] models, all of which run the Wear OS platform. The following exemplary chart illustrates the overlap of accused features in *Cellspin I* with those in the present case, with the differences

[1] On October 16, 2017, Cellspin initiated the following patent infringement lawsuits in the NDCA: Case Nos. 4:17-cv-5928 (Fitbit), -5929 (Moov), -5930 (Adidas), -5931 (Nike), -5932 (Under Armour), -5933 (Fossil), -5934 (Garmin), -5936 (Nikon), -5937 (TomTom), -5938 (Canon), -5939 (GoPro), -5940 (Kodak), and -5941 (Panasonic). Some docket entries for the 4:17-cv-5928 (Fitbit) apply to the consolidated case that includes Fossil as a defendant.

[2] The five Fossil models Cellspin accuses in this case were available to the public during the pendency of *Cellspin I*—before summary judgment of non-infringement on June 7, 2022. Cellspin concedes this in its complaint. (*See* Dkt. No. 1 (Complaint) ¶ 25 (accusing products for infringing **in or before January 2022**.) That is, Cellspin could have, but chose not to, accuse the models alleged to infringe in this case during *Cellspin I*.

shown as red text. A more detailed explanation of the overlap is provided in Fossil's motion to dismiss.

| **'794 Patent, Claim 1** | ***Cellspin I*—Infringement Contention for Fossil Gen 5 (Served June 10, 2020)** | ***Current Case*—Infringement Contention for Fossil Gen 5 LTE (Filed July 3, 2025)** |
|---|---|---|
| 1(p): A method for acquiring and transferring data from | The Fossil Gen 5 Accused Instrumentalities comprise a Fossil Gen 5 Wearable and further comprise practicing (i.e., operation of a Fossil Gen 5 Wearable comprises practicing) a method for acquiring and transferring data, including as set forth in Claim Elements 1.I through 1.XI.a below. | The Fossil Gen 5 LTE Accused Instrumentalities comprise a Fossil Gen 5 LTE Wearable and further comprise practicing (i.e., operation of a Fossil Gen 5 LTE Wearable comprises practicing) a method for acquiring and transferring data (fitness data), including as set forth in Claim Elements 1.I through 1.XI.a below. |
| 1(p).a: a Bluetooth enabled data capture device to | The Fossil Accused Instrumentalities comprise a Bluetooth enabled data capture device, the Fossil Gen 5 Wearable. The Fossil Gen 5 Wearable captures fitness data, for example, heart rate and/or step counting data ("Fitness Data"), for example:<br><br>[citing "Fossil Gen 5 Product Page" and "Fossil Touchscreen Smartwatch Support"]<br><br>For example, the Fossil Gen 5 Wearable comprises a Bluetooth chip comprising a Bluetooth radio transceiver:<br><br>[citing "Fossil Touchscreen Smartwatch Support"] | The Fossil Accused Instrumentalities comprise a Bluetooth enabled data capture device, the Fossil Gen 5 LTE Wearable. The Fossil Gen 5 LTE Wearable captures fitness data, for example, heart rate and/or step counting data ('Fitness Data'), for example:<br><br>[citing "Fossil Gen 5 LTE Product Page" and "Fossil Touchscreen Smartwatch Support"]<br><br>For example, the Fossil Gen 5 LTE Wearable comprises a Bluetooth chip comprising a Bluetooth radio transceiver:<br><br>[citing "Fossil Touchscreen Smartwatch Support"] |

(Ex. D to Dkt. No. 1 (Complaint) at 1-8); Ex. 2 (*Cellspin I*, '794 Inf. Chart) at 2-12)

The only notable substantive change is the inclusion of the OAuth theory for the "user information" and "user identifier" limitations. But this is not a new theory. Cellspin first introduced this infringement theory in *Cellspin I,* albeit belatedly in its expert report. As discussed below, both the NDCA and the Federal Circuit already considered and rejected this theory as untimely.

### B. The NDCA District Court Repeatedly Reprimanded Cellspin And Its Counsel For Misconduct During *Cellspin I*

Throughout *Cellspin I*, the NDCA repeatedly admonished Cellspin and its counsel for obstructive and deceptive conduct. The following is a non-exhaustive list:

(1) The court criticized evasive deposition testimony from Cellspin's CEO and 30(b)(6) witness, pointing to his irrelevant and nonresponsive answers. For example, when asked how he prepared for the deposition, the witness responded that he showered and had a little breakfast. (Ex. 3 (*Cellspin v. Fitbit et al.*, Case No. 4:17-cv-05928-YGR, Dkt. No. 239, Order re Discovery Disputes) at 3).) When asked again, he said he spoke to God, his wife, and his babysitter. *Id*. As another example, the court also criticized Cellspin's counsel's repeated and unwarranted objections, such as when the questioning attorney had to repeat a question—about the witness's equity interest in Cellspin—seven times due to Cellspin's counsel objecting for lack of foundation and relevance. *Id*. at 3–4. The court found that the witness and his counsel acted "improper[ly] and wasted time" and ordered Cellspin to re-produce the witness for another deposition, adding that "[the witness] and [Cellspin's] counsel must refrain from being obstructionist." *Id*. at 4.

(2) Cellspin's counsel signed a witness's declaration without informing the witness or obtaining his consent, an act to which Cellspin's counsel confessed during a hearing. (Ex. 4 (*Cellspin v. Nike*, Case No. 4:17-cv-05931-YGR, Dkt. No. 225, Nike's Motion for Attorneys' Fees) at 2.)

(3) The NDCA also reprimanded Cellspin for "offer[ing] inconsistent statements" regarding expert substitution for strategic advantage, with the court noting that "inappropriate representations to the Court regarding the preparation of an expert report constitute improper conduct." (Ex. 5 (*Cellspin I*, Dkt. No. 258, Order Regarding Expert Substitution) at 2.) The court warned "that any future misconduct is sanctionable." *Id*.

(4) Soon after, "Cellspin again fail[ed] to comply with [the] District's rules" by requesting an extension after the deadline to do so and misrepresenting its motion as "unopposed" when the parties had not reached an agreement. (Ex. 6 (*Cellspin I*, Dkt. No. 269, Order Denying Motion to Continue) at 1.) The court lamented that "obvious principles [of litigation conduct] seem to allude Cellspin" and denied Cellspin's motion, warning that "more severe sanctions" would follow if Cellspin kept contravening the court's rules. *Id*. at 1, 3.

(5) In Cellspin's contemporaneous lawsuit against Garmin, Cellspin was caught misrepresenting that its untimely expert report amendments were based on "new information" when, in fact, it was necessitated by inadequate attorney preparation. (Ex. 7 (*Cellspin v. Garmin*, Case No. 4:17-cv-05934-YGR, Dkt. No. 190, Order Denying Motion to Strike) at 3–4; Ex. 6 (*Cellspin I*, Dkt. No. 269, Order Denying Motion to Continue) at 2.)

(6) On "the very next day after the Court's order in *Garmin*, the Court admonished Cellspin after it was revealed that Cellspin had inappropriately proceeded with the deposition of a substitute expert before first requesting the Court's permission for substitution." (Ex. 6 (*Cellspin I*, Dkt. No. 269, Order Denying Mtn to Continue) at 2.)

(7) "Cellspin's counsel also inappropriately suggested during the parties' December 16, 2021 status conference that an expert's belief in their disclosure's concepts and ideas constitutes verified signature." *Id*. at 2. The court again "put Cellspin on notice that it would not tolerate any future misconduct." *Id*. at 2.

(8) In Cellspin's related lawsuit against Fitbit, Cellspin filed an opposed motion to continue its *Daubert* opposition deadline the night before the deadline "without providing a particularized rationale for the request," which the Court viewed "as a delaying tactic." (Ex. 4 (*Cellspin v. Nike*, Case No. 4:17-cv-05931-YGR, Dkt. No. 225, Nike's Motion for Attorneys' Fees) at 14.)

These are not mere examples of misconduct; they signal how Cellspin and its counsel will behave if this case proceeds despite Cellspin's clear history of vexatious conduct.

### C. *Cellspin I* Resulted In Summary Judgment Of Non-Infringement On Multiple Independent Grounds

On June 7, 2022, the NDCA entered summary judgment of non-infringement against Cellspin on several independent, dispositive grounds. Judge Gonzalez Rogers found that Cellspin failed to raise genuine disputes of material fact regarding infringement of key claim limitations, including "apply," "attach," "store," "new data," "polling," "cryptographically authenticated," "first processor," "user identifier," and "user information"—all limitations Cellspin is re-asserting against Fossil here. *See generally* Ex. 8 (*Cellspin I*, Dkt. 312, Summary Judgment Orders). The court also granted summary judgment on Cellspin's (1) failure to seek discovery from Google, despite accusing Fossil's Wear OS watches of relying on Google's App to perform infringing steps; (2) failure to establish divided infringement or show how Fossil directed or controlled users to perform infringing steps; (3) failure to demonstrate that infringing steps occurred in the required order or within the U.S.; and (4) failure to provide evidence of infringement through Fossil's internal testing or assembly. *Id*. at 12-16, 47-49, 68-69. The court also rejected Cellspin's untimely infringement theory that the "OAuth" token practices the "user identifier" and "user information" limitations, which Cellspin presented for the first time in its expert report. *Id*. at 17-19.

The court also criticized Cellspin's conclusory expert reports and insufficient prosecution of its case, stating:

> At the outset, the Court concludes that Cellspin fails to marshal the evidence necessary to defeat the defendants' summary judgment motions. This is perhaps a consequence of Cellspin's decision to litigate this case with numerous defendants and accused products. While this choice was Cellspin's right, doing so did not change Cellspin's burden of proof. However, it is too late now to speculate whether a different tactic would have led to a different outcome.

*Id.* at 2. Indeed, it was too late at the summary judgment stage to speculate whether the outcome may have changed with a different strategy. And now, it is beyond too late for Cellspin to try to re-litigate these claims in another court.

### D. Cellspin's Underhanded Tactics Continued After Summary Judgment

Soon after losing summary judgment, Cellspin re-asserted its claims in this District against Nike, much as it does so now against Fossil. In November 2023, Cellspin sued Nike in the Eastern District of Texas (*Cellspin Soft, Inc. v. Nike, Inc.*, Case No. 2:22-cv-00455), reasserting the same patents and accusing the same Nike products it previously tried (untimely) to add in the NDCA litigation. (Ex. 9 (*Cellspin v. Nike*, Case No. 4:23-cv-05340-YGR, Dkt. No. 79, Nike, Inc.'s Motion for Sanctions) at 2, 4.) Despite residing in the NDCA, previously suing Nike there, and identifying no relevant witness or evidence in the EDTX, Cellspin pursued a copycat lawsuit in Texas to avoid the NDCA. The case was ultimately transferred back to the NDCA, where Nike moved for sanctions based on Cellspin's forum shopping and other misconduct. *Id.* at 2. The parties settled before the court ruled on the motion (but after Judge Gonzalez Rogers's summary judgment was upheld by the Federal Circuit).

And more than six months after the summary judgment order, Cellspin moved to recuse Judge Gonzalez Rogers, arguing an appearance of impropriety because her husband is a senior partner at McKinsey & Company, which allegedly has a strategic partnership with Google, the parent company of NDCA defendant Fitbit. (Ex. 10 (*Cellspin v. Fitbit et al.*, Case No. 17-cv-05928, Dkt. No. 366, Motion for Recusal) at 1.) Cellspin also cited the judge's personal investments in Vanguard index funds, which holds shares of Google and some of the defendants. *Id.* at 14. The court denied the motion, describing it as "a measure of desperation," "divorced from the law and the facts," and "plagued by myriad procedural deficiencies." (Ex. 11 (*Cellspin v. Fitbit*

*et al.*, 4:17-cv-05933-YGR, Dkt. No. 358, Order Denying Recusal) at 2.) It further viewed Cellspin's motion as an "extreme and meritless" tactical maneuver. *Id*. at 1–2, 18.

**E. Federal Circuit Affirmed Summary Judgment**

On November 1, 2024, the Federal Circuit affirmed the NDCA's summary judgment of non-infringement for all defendants and all asserted claims. Regarding Fossil in particular, the Court additionally upheld the exclusion of Cellspin's late reliance on the "OAuth" feature, noting it was first raised in expert reports and not timely disclosed in infringement contentions, despite local rules permitting timely amendments for good cause. (Ex. 12 (2024-11-01 Fed. Cir. Op. at 15–16) ("Cellspin could have sought to amend its infringement contentions: The relevant local rule allows such amendment . . . . Yet Cellspin did not seek to amend its contentions.").) The Federal Circuit also found no genuine dispute of material fact regarding the NDCA's findings that the accused products did not satisfy the "apply," "attach," "store," "user identifier," or "user information" limitations, all of which are present in the asserted claims in this case. *Id*. at 15–16.

**F. Fossil Attempted To Resolve This Matter Amicably**

Before filing this motion, Fossil repeatedly warned Cellspin and its counsel that this lawsuit is baseless, that it is clearly precluded by *Cellspin I*, and that pursuing it would be sanctionable. Fossil also detailed why the claims lacked merit and conferred with Cellspin's counsel to confirm that its filing was not in error. Ex. 13 (Email Chain between Cellspin's counsel and Fossil's counsel). Cellspin responded by demanding millions of dollars to settle the case, without providing any explanation for the proposed figure or addressing the preclusive effect of *Cellspin I* on multiple grounds.

On September 15, 2025, Fossil served this motion on Cellspin pursuant to Rule 11(c)(2)'s safe harbor provision. *See* Ex. 17 (Service Email). Fossil now files it after the 21-day period.

## II. LEGAL STANDARD

### A. Rule 11 Standard

Under Rule 11, by signing and filing a pleading, written motion, or other paper, an attorney certifies "(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by nonfrivolous argument for extending modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or lack of information." FED. R. CIV. P. 11(b).

If violated, the Court "may impose an appropriate sanction on any attorney, law firm, or party." FED. R. CIV. P. 11(c)(1). Federal courts have "inherent powers" to sanction "conduct which abuses the judicial process." *Goodyear Tire and Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). This authority includes the power to assess attorneys' fees "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45–46. "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44. That said, Cellspin and its counsel have not demonstrated restraint or discretion in initiating this lawsuit, which weighs in favor of the Court exercising its authority to impose sanctions.

### B. Factors In Determining Form Of Sanctions

"In considering what form of sanction to impose, the Court may consider: (1) whether the conduct was willful or negligent; (2) whether the activity was isolated or part of a pattern of activity; (3) whether the conduct affected only a single event within the case or the entire litigation;

(4) any previous similar conduct by the attorney; (5) whether the conduct was intended to cause injury; (6) the effect of the conduct on the litigation in terms of time and expense; (7) whether the responsible party was trained in the law; and (8) what sanction, given the financial resources of the responsible person, is needed to deter similar activity by other litigants." *Bullard v. Chrysler Corp.*, 925 F. Supp. 1180, 1190 (E.D. Tex. 1996).

## III. ARGUMENT

Cellspin and its counsel violated Rule 11(b) by re-filing claims already resolved by *Cellspin I*. They assert the same patents against the same Fossil product features previously found to be non-infringing by the NDCA in a summary judgment order that the Federal Circuit affirmed. Sanctions are warranted to deter further abusive litigation and to compensate Fossil for defending this frivolous suit.

### A. *Cellspin I* Precludes This Lawsuit And Cellspin Knows It

This action is barred by the district court's summary judgment rulings in *Cellspin I*, which found Fossil's products non-infringing for multiple independent reasons. Yet, Cellspin knowingly reasserts the same patents against the same features. *See supra* Section I.A. As explained in Fossil's motion to dismiss, claim preclusion, issue preclusion, and the *Kessler* doctrine bar this lawsuit. (*See* Dkt. No. 11.) Cellspin's frivolous and harassing filing warrants sanctions under Rule 11. *See, e.g.*, *Escamilla v. M2 Tech., Inc.*, 657 F. App'x 318 (5th Cir. 2016) (sanctioning defendant under Rule 11 for failing to present any "new arguments that were not already considered and rejected").

Cellspin's attempt to distinguish this suit from *Cellspin I* fails. When Fossil explained—verbally and over multiple correspondence—the preclusive effect of *Cellspin I*, Cellspin denied it, and argued: (1) "this 2025 lawsuit [is] against five (5) Fossil accused wearables that were not involved in the prior 2017 lawsuit"; and (2) "Issue preclusion does not bar Cellspin from asserting

OAuth as the 'user identifier' in the 2025 lawsuit because the prior ruling was procedural, not substantive." Ex. 14 (2025-07-10 Ltr from Garteiser) at 2. Both excuses are wrong.

### 1. The Five New Products Are Not Meaningfully Different From Those Found Non-Infringing In *Cellspin I*

The accused features remain the same. *See supra* Section I.A. As explained in Fossil's motion to dismiss, claim preclusion bars this lawsuit because the entire scope of this case could have been timely included in *Cellspin I*. All five accused products were publicly available before the June 7, 2022 summary judgment, as Cellspin admits. (*See* Dkt. No. 1 (Complaint) ¶ 25 (listing the accused products, which were all released as of **January 2020** and **January 2022**).) Cellspin could have added these products through amended pleadings or supplemental discovery responses and chose not to. Hence, claim preclusion bars this lawsuit. *See Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 500 F. Supp. 2d 864, 871–73 (N.D. Ill. 2007) (barring a second lawsuit accusing new products that could have been accused in the prior case, stating "[r]es judicata bars litigation not only of those issues actually decided in a previous lawsuit, but also all issues that could have been raised in the prior action").

Further, claim preclusion applies where, as here, the accused products are "essentially the same" as those previously adjudicated—i.e., any differences are "unrelated to the [claim] limitations." *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 479–80 (Fed. Cir. 1991). As explained above and in Fossil's motion to dismiss, the accused products here are essentially the same as the accused products in *Cellspin I* because Cellspin merely repeats its infringement contentions. Cellspin has admitted that "Cellspin's current contentions align with the prior claim constructions, and the evidence, including Fossil's source code and technical documentation for the new wearables." Ex. 14 (2025-07-10 Ltr from Garteiser) at 2. Hence, the non-infringement summary judgment applies equally to the products at issue in *Cellspin I* and those here.

### 2. The "OAuth" Theory Is Neither Material Nor New

Cellspin's argument that its "OAuth" infringement theory overcomes preclusion is wrong for multiple reasons. First, the accused "OAuth" feature is present in the accused products from *Cellspin I*. Indeed, Cellspin alleges it learned about it by reviewing source code for those products during fact discovery in *Cellspin I*. Ex. 14 (2025-07-10 Ltr from Garteiser.) And as explained, a patentee is precluded from re-accusing products that have the same accused features as previously-accused products. In fact, Cellspin previously argued, quite stridently, that its OAuth infringement theory was timely disclosed in *Cellspin I*. (Ex. 15 (*Cellspin I*, Dkt. 284, Cellspin's Opposition Motion for Summary Judgment) at 18 ("Cellspin's allegation that the Fossil OAuth Token satisfies the 'user identifier' and 'user information' limitations **is not in any sense a 'new theory**.'" (emphasis added)).) Cellspin's attempt to backtrack on this is, at best, disingenuous.

Second, Cellspin cannot dispute that, during *Cellspin I*, it could have—and failed to—timely present this infringement theory. Cellspin's failure to diligently prosecute its prior infringement does not open the door for Cellspin to try again. Indeed, regardless of Cellspin's untimeliness, this issue was fully adjudicated. *See Zoll Medical Corp. v. Philips Electronics North America Corp.*, 2014 WL 1428146, *4 (D. Mass. 2014) (dismissing a lawsuit per issue preclusion and ruling that the underlying judgment was a final judgment on noninfringement even though the patentee had effectively dropped its infringement claim by not presenting evidence of infringement). Cellspin mistakenly believes that because the summary judgment ground involving the OAuth theory was granted and affirmed due to untimeliness and not necessarily on the merits, it has no preclusive effect, but summary judgment of no evidence to support infringement is just as preclusive as summary judgment of affirmative evidence of non-infringement *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party may be discharged by

'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.").

Third, even if the OAuth theory were considered new, it does nothing to overcome the multiple other independent grounds for non-infringement found in *Cellspin I*, which the Federal Circuit affirmed. *See supra*, Sections I.C–E. Re-asserting one alternate infringement theory for just two limitations cannot revive this resolved case.

### B. The Pattern Of Misconduct By Cellspin And Its Counsel Warrants Sanctions

This frivolous lawsuit is not an isolated incident but part of a broader pattern of improper conduct by Cellspin and its counsel. As detailed in Sections I.B–D, *supra*, the NDCA repeatedly admonished them during *Cellspin I* and related cases for obstructionist behavior, deception, meritless claims, and procedural violations, issuing multiple warnings. Despite this history, and despite Fossil's repeated notices that this suit is frivolous under well-established doctrines of preclusion, fairness, and general court rules, Cellspin and its counsel have decided to proceed anyway. This mirrors their prior strategy, including the filing of a similar post-summary-judgment suit against Nike in this District based on the same patents and products it failed to timely accuse in the NDCA lawsuit. *See supra*, Sections I.D. Cellspin and its counsel just barreled ahead, ignoring protocol, rules, and case law in an effort to harass Fossil into settling. That pattern of conduct started with *Cellspin I*, continued with other related cases, and will undoubtedly continue here if this case is permitted to proceed beyond the pleadings.

In fact, earlier this year, this Court sanctioned Cellspin's lead counsel for advancing frivolous legal theories and violating basic rules. Cellspin's counsel represented the plaintiffs in *Symbology Innovations, LLC v. Valve Corporation*, 2:23-cv-00419-JRG (E.D. Tex. 2023) and *Quantum Technology Innovations, LLC v. Valve Corporation et al.*, 2:23-cv-00425-JRG (E.D.

Tex. 2023). This Court found that counsel had advanced "legally frivolous" arguments designed to "improperly delay" and "needlessly increase[] the cost of litigation." (Ex. 16 (*Symbology v. Valve*, *Quantum v. Valve*, Case No. 2:23-cv-00425-JRG, Dkt. No. 75, Memo of Opinion and Order) at 12–13, 15–16.) The Court also found that counsel acted unlike an "objectively reasonable attorney" and even made "factual contentions [counsel] knew or should have known were false." *Id.* at 15–18. The Court concluded that counsel's actions fell below the standard of competence expected of attorneys and ordered counsel to complete 60 hours of remedial legal education. *Id.* at 21–22. Despite apparently completing those hours, Cellspin's counsel is still advancing frivolous theories and ignoring binding case law barring this lawsuit.

In short, despite prior warnings, admonishments, and sanctions, Cellspin and its counsel continue to pursue baseless litigation, underscoring the need for a stronger deterrent.

### C. Sanctions Should Remedy Harm And Deter Future Misconduct

Sanctions are necessary to both compensate Fossil and to deter future abuse by Cellspin and its counsel. As the Supreme Court emphasized, Rule 11 sanctions aim to curb baseless filings and to protect the integrity of the judicial process. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 397 (1990).

Multiple factors support sanctions here, including: a repeated pattern of misconduct, the impact on litigation costs and judicial efficiency, myriad prior warnings, and counsel's extensive legal training and experience. *See Bullard*, 925 F. Supp. at 1190. At minimum, the Court should dismiss this case with prejudice and award Fossil its fees and costs. And given that prior warnings and sanctions failed to deter similar conduct, harsher measures may be necessary to send a sterner message.

Importantly, not all defendants targeted by Cellspin, its counsel, and his other clients may have the resources to challenge frivolous suits. The threat of a lawsuit alone—especially from an

experienced patent litigator like Cellspin's counsel—may coerce settlements regardless of merit. Sanctioning Cellspin and its counsel now may save future targets from abuse.

Additionally, even if Cellspin voluntarily dismisses this case, sanctions remain appropriate. As the Supreme Court has held, "'violation of Rule 11 is complete when the paper is filed,' . . . [A] voluntary dismissal does not expunge the Rule 11 violation." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) (quoting *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir. 1987)). "If a litigant could purge his violation of Rule 11 merely by taking a dismissal, he would lose all incentive to stop, think and investigate more carefully before serving and filing papers." *Cooter & Gell*, 496 U.S. at 395 (1990) (cleaned up); *see also Jennings v. Joshua Indep. Sch. Dist.*, 948 F.2d 194, 197 (5th Cir. 1991) ("The reasonableness of the conduct involved is to be viewed at the time counsel . . . signed the document alleged to be the basis for the Rule 11 violation."). Allowing dismissal to shield violators would undermine Rule 11's deterrent purpose. Even if Cellspin dismisses this lawsuit, sanctions should still be imposed.

## IV. CONCLUSION

Cellspin and its counsel knowingly reasserted fully litigated, meritless claims. Their continued pattern of misconduct underscores the need for sanctions. Fossil respectfully requests sanctions against Cellspin and its counsel.

Fossil also respectfully requests that, should the Court grant this motion, the Court allow fourteen days to submit an accounting of fees and costs incurred due to the sanctionable conduct.

Dated: October 7, 2025

Respectfully submitted,

By: */s/ Ricardo J. Bonilla*

Neil J. McNabnay
Texas Bar No. 24002583
mcnabnay@fr.com
Ricardo J. Bonilla
Texas Bar No. 24082704
rbonilla@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 – Telephone
(214) 747-2091 – Facsimile

Shelby E. Farrand
Texas Bar No. 24142883
farrand@fr.com
**FISH & RICHARDSON P.C.**
909 Fannin Street Suite 2100
Houston, TX 77010
(713) 654-5300 – Telephone
(713) 652-0109

**COUNSEL FOR DEFENDANTS FOSSIL GROUP, INC. AND FOSSIL STORES I, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on October 7, 2025, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Ricardo J. Bonilla*
Ricardo J. Bonilla