**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| CELLSPIN SOFT, INC.,<br>*Plaintiff*,<br>v.<br>FOSSIL STORES I, INC., *and* FOSSIL GROUP, INC., GROUP, INC.,<br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 2:25-CV-00683-JRG-RSP |

**REPORT AND RECOMMENDATION**

Before the Court are Defendants' Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim, **Dkt. No. 11**, and Defendants' Rule 11 Motion for Sanctions, **Dkt. No. 17**. In these Motions, Defendants contend this is a frivolous case barred by claim preclusion, issue preclusion, and the *Kessler* doctrine given a previous judgment between the same parties concerning essentially the same products. Defendants therefore ask the Court to dismiss the claims and award sanctions. But for the reasons set forth below, both Motions should be denied.

## I. BACKGROUND

### A. The Patents

Plaintiff accuses Defendants of infringing three related patents concerning media-content distribution. Compl., Dkt. No. 1. The asserted patents teach "pairing a digital data capture device in conjunction with a mobile device for automatically publishing data and multimedia content on one or more websites simultaneously." U.S. Patent 8,738,794 at 1:34–35. *See also* U.S. Patent 8,892,752 at 1:40–42 (same); U.S. Patent 9,749,847 at 1:49–51 (same). Each of the patents claims priority to the same provisional application and appears to have the same disclosure. *See* '794 Patent at [60]; '752 Patent at [60]; '847 Patent at [60].

The patents concern capturing and publishing data and multimedia content on the internet in real time. Typically, a user captures an image using a camera, stores the image on a memory device of the camera, and transfers the image to a personal computer using a cable or memory stick. The user then manually uploads the image onto a website, which takes time and effort. Based on this, the patents identify a need for *automatically* detecting capture of data and multimedia content, transferring the captured data and content to the mobile device, and publishing the data and content on websites. *See generally* '794 Patent at 1:37–54.

To address that need, the patents disclose using a digital data capture device in conjunction with a Bluetooth-enabled mobile device. The mobile device includes an application that detects the capture of data and multimedia content and initiates transfer of that data and content to a client application. The client application then automatically publishes the transferred content to the websites. *See generally* '794 Patent at 2:14–25.

As an example, Claim 1 of the '794 Patent recites:

> 1. A method for acquiring and transferring data from a Bluetooth enabled data capture device to one or more web services via a Bluetooth enabled mobile device, the method comprising:
>
> providing a software module on the Bluetooth enabled data capture device;
>
> providing a software module on the Bluetooth enabled mobile device;
>
> establishing a paired connection between the Bluetooth enabled data capture device and the Bluetooth enabled mobile device;
>
> acquiring new data in the Bluetooth enabled data capture device, wherein new data is data acquired after the paired connection is established;
>
> detecting and signaling the new data for transfer to the Bluetooth enabled mobile device, wherein detecting and signaling the

new data for transfer comprises:

determining the existence of new data for transfer, by the software module on the Bluetooth enabled data capture device; and

sending a data signal to the Bluetooth enabled mobile device, corresponding to existence of new data, by the software module on the Bluetooth enabled data capture device automatically, over the established paired Bluetooth connection, wherein the software module on the Bluetooth enabled mobile device listens for the data signal sent from the Bluetooth enabled data capture device, wherein if permitted by the software module on the Bluetooth enabled data capture device, the data signal sent to the Bluetooth enabled mobile device comprises a data signal and one or more portions of the new data;

transferring the new data from the Bluetooth enabled data capture device to the Bluetooth enabled mobile device automatically over the paired Bluetooth connection by the software module on the Bluetooth enabled data capture device;

receiving, at the Bluetooth enabled mobile device, the new data from the Bluetooth enabled data capture device;

applying, using the software module on the Bluetooth enabled mobile device, a user identifier to the new data for each destination web service, wherein each user identifier uniquely identifies a particular user of the web service;

transferring the new data received by the Bluetooth enabled mobile device along with a user identifier to the one or more web services, using the software module on the Bluetooth enabled mobile device;

receiving, at the one or more web services, the new data and user identifier from the Bluetooth enabled mobile device, wherein the one or more web services receive the transferred new data corresponding to a user identifier; and

making available, at the one or more web services, the new data

> received from the Bluetooth enabled mobile device for public or private consumption over the internet, wherein one or more portions of the new data correspond to a particular user identifier.

’794 Patent at 11:48–12:38.

**B. The Previous Action**

In 2017, Plaintiff asserted these same patents—in fact, the same claims—against these same Defendants. *See Cellspin Soft, Inc., v. Fossil Group, Inc.*, No. 4:17-cv-05933-YGR (N.D. Cal) (*Cellspin I*). In *Cellspin I*, Plaintiff accused Fossil smartwatches that ran Google’s Wear OS operating system and communicated with the Google Wear OS mobile application. *Cellspin I* Summ. J. Orders, Dkt. No. 11-4 at 47. Plaintiff asserted the Fossil smartwatches included the recited Bluetooth-enabled data capture device. Fossil Gen 5 PIC Chart, Dkt. No. 11-5 at 2.

Fossil moved for summary judgment of non-infringement concerning the Wear OS products, contending those products communicated with a Google app and that Fossil did not have any hardware or software on the corresponding mobile device, the paired smartphone. *Id.* Fossil argued Cellspin had no evidence to support its allegations about third-party phones running the Google App because Cellspin did not seek discovery from Google. *Id.*

The court agreed. Specifically, the court found Plaintiff’s opposition and expert “both admit that certain functions claimed in the asserted patents [were] performed by the source code of the accused mobile application, and not the source code of the Fossil Wear OS products.” *Id.* at 48. The court concluded:

> Cellspin’s theory—Wear OS products’ software performs all of the recited functions of the claimed patents—fails because as Cellspin’s opposition and expert admit, certain claimed functions are instead performed by Google’s mobile application code. Without any discovery as to how the Google application interacts,

> Cellspin has no evidence to prove the performance of the asserted claims, each of which contain elements requiring performance by a mobile device.

*Id.* at 49. Given this lack of evidence, the court granted the motion. *Id.* The Federal Circuit affirmed. *See Cellspin Soft, Inc. v Fitbit LLC*, No. 2022-2025, 2024 WL 4648069 (Fed. Cir. Nov. 1, 2024).

### C. The Current Action

Plaintiff identifies five allegedly infringing smartwatch models, which are different, at least in name, than the smartwatches at issue in *Cellspin I*. For example, whereas Plaintiff accused the Fossil Gen 5 Wearable in *Cellspin I*, it now accuses the Fossil Gen 5 LTE Wearable. *See generally* Defs.' Comparison Chart for Cellspin's Infringement Contentions for U.S. Patent No. 8,738,794, Dkt. No. 11-6.

Defendants, however, stress that, despite the different model names, these are the same parties, claims, and products at issue in *Cellspin I*:

> Cellspin targets Bluetooth-enabled data transfer functionality in both cases. In *Cellspin I*, Cellspin accused 68 Fossil smartwatches, most of them for their Bluetooth-enabled data transfer functionality and implementation of the Wear OS functionality provided by Google. In this case, Cellspin targets the same Bluetooth-enabled data transfer features in five "newer" models, all of which likewise run the Wear OS platform.

Dkt. No. 11 at 3. Thus, given the previous judgment concerning the allegedly same products, Defendants contend this is a frivolous case barred by claim preclusion, issue preclusion, and the *Kessler* doctrine. *Id.* at 10. Defendants accuse Plaintiff of knowing this action is barred by the *Cellspin I* summary-judgment rulings, but nevertheless reasserting the same patents against the same features. Dkt. No. 17 at 10. Given what Defendants call "a repeated pattern of misconduct [by Cellspin and its counsel], the impact on litigation costs and judicial efficiency, myriad prior

warnings [in this and other Districts], and counsel's extensive legal training and experience," they ask the Court to dismiss this case with prejudice and award them fees and costs. *Id.* at 14.

Plaintiff responds that none of these preclusive doctrines apply because, among other things, this case concerns different instrumentalities than *Cellspin I*. Dkt. No. 14 at 6. According to Plaintiff, "Fossil's newly developed infringing devices incorporate LTE radios, $SpO_2$ sensors, Snapdragon 4100+ chipsets, and hybrid displays. They also rely on different instrumentalities, for example, the Google Fit mobile application and Google backend servers [and] software." *Id.* (asserting "*Cellspin I* involved Wear OS 2.x and the Google Wear OS mobile application," and Google has since introduced Wear OS 3.0 and Wear OS 4.0). Plaintiff says "[t]hese versions introduced redesigned frameworks, new APIs, and deeper integration with health and fitness features through the Google Fit mobile application," which Plaintiff considers a fundamental change in how these accused devices communicate relative to the devices at issue in *Cellspin I*. *Id.* at 6–7. Regarding issue preclusion, Plaintiff stresses that this principle only applies to a determination essential to the judgment, which was not the case in *Cellspin I* because the iOS Google App was never before the Court. Dkt. No. 14 at 9. As for sanctions, Plaintiff responds its positions "are reasonable and grounded in the facts and the law such that any sanctions are unwarranted." Dkt. No. 26 at 8.

## II. LEGAL STANDARD

### A. Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

If a plaintiff fails to "state a claim upon which relief can be granted," a defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). Generally, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In ruling on a motion to

dismiss, the district court generally must not go outside the pleadings," but "may consider documents attached to a motion to dismiss that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (internal quotation marks omitted).[1]

### B. Claim Preclusion and Issue Preclusion in the Context of a Rule 12(b)(6) Motion to Dismiss

In evaluating a Rule 12(b)(6) motion to dismiss, a court may consider the defenses of claim preclusion and issue preclusion. *See Pie Dev., L.L.C. v. Pie Carrier Holdings, Inc.*, 128 F.4th 657, 661 (5th Cir. 2025) (noting courts "may sua sponte address res judicata at the motion to dismiss stage where all of the relevant facts are contained in the record . . . and all are uncontroverted"). Claim preclusion, which "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit," "applies when (1) the parties in the later action are identical to, or in privity with, the parties in the earlier action; (2) the judgment in the earlier case was rendered by a court with proper jurisdiction; (3) there has been a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits." *Duffie v. United States*, 600 F.3d 362, 372 (5th Cir. 2010). Issue preclusion, which "bar[s] litigation of an issue previously decided in another proceeding," applies when "(1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is no special circumstance that would make it unfair to apply the doctrine." *Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415, 1422 (5th Cir. 1995).

[1] The Federal Circuit "review[s] a district court's Rule 12(b)(6) dismissal under the law of the regional circuit." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).

### C. The *Kessler* Doctrine

The *Kessler* doctrine "precludes some claims that are not otherwise barred by claim or issue preclusion." *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1055–56 (Fed. Cir. 2014). Because "traditional notions of claim preclusion do not apply when a patentee accuses new acts of infringement, i.e., post-final judgment, in a second suit—even where the products are the same in both suits[,] [s]uch claims are barred under general preclusion principles only to the extent they can be barred by issue preclusion, with its attendant limitations." *Id.* at 1056. "The *Kessler* Doctrine fills the gap between these preclusion doctrines, however, allowing an adjudged *non-infringer* to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result." *Id.*

Specifically, the doctrine grants "a limited trade right to continue producing, using, and selling the [accused devices] that were the subject of the first suit and to do so without fear of allegations of infringement by [the plaintiff]—even when the acts of infringement occurred post-final judgment and even when it was third-parties who allegedly engaged in those acts of infringement." *Id.* "'[T]he status of an infringer is derived from the status imposed on the *thing* that is embraced by the asserted patent claims.'" *Id.* (quoting *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 476 (Fed. Cir. 1991)) (brackets in original). "And, when the devices in the first and second suits are 'essentially the same,' the 'new' product(s) also acquires the status of a noninfringing device vis-à-vis the same accusing party or its privies." *Id.*

## III. DISCUSSION

### A. Defendants' Rule 12(b)(6) Motion

Defendants' claim preclusion, issue preclusion, and *Kessler*-doctrine assertions each requires that the accused products are identical to or "essentially the same" as the products accused

in *Cellspin I*. Here, Defendants assert that identicality or similarity based on Plaintiff's infringement contentions. *See* Dkt. No. 11 at 2–3. Plaintiff, however, disputes that assertion, claiming the newly accused products represent a "fundamental change" from the devices at issue in *Cellspin I*. Dkt. No. 14 at 6–7.

Rule 12(b)(6) dismissals are not appropriate when, as here, the parties have material factual disputes. While a court "may consider documents attached to a motion to dismiss," those documents must be "referred to in the plaintiff's complaint and . . . central to the plaintiff's claim." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010). Here, nothing in the Complaint alleges the now-accused products are identical to or essentially the same as those at issue in *Cellspin I*, so a Rule 12(b)(6) dismissal is not proper.

In Part II of their Motion, Defendants cite four district-court decisions that show when such a dismissal is proper. In *Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*, No. 10-00384, 2010 WL 4448824 (D. Haw. Oct. 29, 2010), the Court *sua sponte* dismissed the infringement action based on claim preclusion because "Plaintiffs fully acknowledge[d] that the two devices in question [were] nearly identical." *Hako-Med*, 2010 WL 4448824, at *4. "Therefore, through Plaintiffs' own assertions, the Court [found] that the allegedly infringing devices in [the earlier case] and the instant case [were] 'essentially the same' . . . ." *Id.*

In *Wisconsin Alumni Research Foundation v. Apple Inc.*, 112 F.4th 1364 (Fed. Cir. 2024), the appellate court found no clear error in the district court's conclusion that the accused instrumentalities in two different sets of processors were essentially the same. *Apple*, 112 F.4th at 1379. The district court made that decision based in part on the patentee's statement in the earlier proceeding that the later-accused chips had the same infringing design. *See Wis. Alumni Rsch. Found. v. Apple, Inc.*, No. 14-CV-062-WMC, 2022 WL 2080153, at *3 (W.D. Wis. May 10, 2022)

(noting the patentee's post-trial briefing statements in the earlier lawsuit, made when trying to bring what became the later-accused chips into that lawsuit on equitable grounds, that the later-accused chips had the same infringing design).

In *Golden v. United States*, No. 2024-2256, 2025 WL 900873 (Fed. Cir. Mar. 24, 2025), the plaintiff "repeatedly treated the Google devices accused in the present action as 'the same' as the accused devices" in the prior action. *Golden*, 2025 WL 900873, at *2 (noting the plaintiff alleged the accused devices "all have virtually identical elements" from the devices accused in the previous lawsuit). The court noted the plaintiff "offer[ed] no explanation, either in his filings at the Claims Court or in his opening brief, as to how the . . . accused devices differ[ed] from the devices at issue." *Id.*

Finally, in *Colida v. Sony Ericsson Mobile Communic'ns USA, Inc.*, 2006 WL 3068669 (S.D.N.Y. Oct. 26, 2006), which concerned a design patent, the court simply made a comparison based on diagrams of the two accused products. *Colida*, 2006 WL 3068669, at *2. There weren't any facts to dispute.

This case, however, is more technically involved than comparing accused products to design-patent drawings. And more importantly, Plaintiff contests, with a detailed explanation, that the accused instrumentalities are "essentially the same." Accordingly, because there are factual disputes about whether the accused products are identical or "essentially the same" to the products at issue in *Cellspin I*, a Rule 12(b)(6) dismissal is not proper. Defendants' motion should therefore be denied.

### B. Defendants' Motion for Sanctions

Given the Court should deny Defendants' Rule 12(b)(6) Motion, the Court should also deny Defendants' Motion for Sanctions, but without prejudice. Denying the Rule 12(b)(6) motion

simply means the record does not support claim preclusion, issue preclusion, or the *Kessler* doctrine at this stage of the proceeding. Defendants, of course, might later establish the accused devices are identical or "essentially the same" as the devices of *Cellspin I*, and that Plaintiff knew as much, in which case Defendants may re-urge their motion for sanctions.

## IV. CONCLUSION

For the reasons provided above, Defendants' Motion to Dismiss should be **DENIED,** and Defendants' Motion for Rule 11 Sanctions should be **DENIED WITHOUT PREJUDICE**.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this report within fourteen (14) days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendation [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 9th day of September, 2026.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE