**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

**CELLSPIN SOFT, INC.,**

**Plaintiff,**

**v.**

**FOSSIL GROUP, INC., et al.,**

**Defendants.**

**Civil Action No: 2:25-cv-00683-JRG-RSP**

**PATENT CASE**

**JURY TRIAL DEMANDED**

**DEFENDANTS' OBJECTIONS TO THE CLAIM CONSTRUCTION ORDER (DKT. 89)**

Pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and L.R. CV-72(b), Defendants Fossil Group, Inc. and Fossil Stores I, Inc. (collectively, "Fossil") object to the Claim Construction Order (Dkt. 89, "Order") insofar as it holds that claims 1, 2, 16, and 17 of U.S. Patent No. 8,738,794 ("'794 Patent") are not indefinite. That holding is contrary to law because the Order: (1) never addresses the definite article ("***the*** user identifier") within dependent claims 2 and 17, which under the Order's reading of the independent claims has no determinable referent; (2) rejects competing readings of independent claims 1 and 16 as "pointless" or making "no sense," without support from anything within the intrinsic record; and (3) leaves several "user identifier" recitations in claims 1 and 16 unresolved. The Order also omits the parties' agreed constructions.

## I. LEGAL STANDARD

The Court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Claim construction and indefiniteness are questions of law. A claim is invalid as indefinite if, when read in light of the specification and prosecution history, it fails to "inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

## II. OBJECTIONS

### A. The Order does not address dependent claims 2 and 17, and under its own reasoning "*the* user identifier" has no determinable referent.

Dependent claims 2 and 17 require that "***the user identifier*** comprises one or more elements from user information," namely "user-name, user-password, user-device-information, user settings, or user preferences." '794 Patent, cls. 2, 17 (emphasis added). Fossil briefed (Dkt. 54 at 22–23) and argued at the hearing (Dkt. 88-1 at 25–26; Dkt. 87 at 67:4–70:7) that "***the*** user identifier" has no determinable antecedent. The Order mentions claim 2 (Order at 14) and holds claims 2 and 17 "[n]ot indefinite" (*id.* at 16), but its analysis never mentions or addresses these

dependent claims' use of "***the***" as a definite article for "***the*** user identifier" term. A holding of definiteness that does not address the limitation challenged is contrary to law. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

The Order holds that the "applying" step applies "***a*** user identifier" "for each destination web service," that "***each*** user identifier" refers to "each of the previously applied user identifiers, regardless of how many there are," and that the "transferring" step sends each web service its own identifier. Order at 14–15 (emphases added). On that reading, when "publishing" to three services, the claimed method involves three "user identifiers." Claims 2 and 17 then further require that "***the*** user identifier" must contain at least one of the listed elements. But which one of the three "user identifiers" is "***the*** user identifier"? Cellspin's latest answer is ***all*** of them. Dkt. 87 at 77:2–5; *see also* Dkt. 62 at 6–7. But attorney argument cannot supply the reasonable certainty the intrinsic record lacks, *see Nautilus*, 572 U.S. at 911, and Cellspin's answer requires impermissibly redrafting the claim from "***the*** user identifier" to become "***each*** user identifier."

The various available readings yield opposite results on identical facts: *e.g.*, a method that applies a "user-name" for one web service and an opaque bearer token (containing no element recited in claims 2 or 17) for another would fit a reading allowing any one of the applied "***a*** user identifier[s]," but not a reading under which ***all*** of them must meet the limitations of claims 2 or 17 as Cellspin now suggests. Dkt. 54 at 22–23. Nothing in the claims, specification (which never even uses the term "user identifier," *id.* at 23), or prosecution history chooses between the possible readings. Two equally available readings that produce different infringement outcomes on the same facts are the hallmark of indefiniteness. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341–45 (Fed. Cir. 2015); *Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 803 F.3d 620, 630–35 (Fed. Cir. 2015).

Cellspin's own briefing confirms the problem. Its opening brief vaguely argued "***the*** user identifier" refers to "***a*** user identifier required by the parent claim" while arguing that "a" means "one or more." Dkt. 48 at 10–11 (emphases added). Subsequently, Cellspin's reply argued that "***the*** user identifier" in these dependent claims refers to "the identifier [singular] satisfying the parent method," and that every user identifier "relied on for another destination remains subject to that requirement," so that one destination's qualifying user identifier "does not cure" another's. Dkt. 62 at 6–7. Cellspin's position has thus shifted from "a user identifier" to "the identifier" to "***each*** user identifier." None of those positions is grounded in the intrinsic record.

### B. *Nautilus* forecloses resolving disputes involving multiple available readings by choosing the reading that "would make sense," as the Order does here.

The Order considered three readings of the "transferring" step's recitation of "***a*** user identifier" in claims 1 and 16 (Dkt. 54 at 19–20) and rejected two of them, holding that "only (2) would make sense to a skilled artisan," because reading "(3)" "would be pointless" and reading "(1)" "would make no sense." Order at 15. This analysis is contrary to law for at least four reasons.

*First*, it applies the wrong test. "It cannot be sufficient that a court can ascribe *some* meaning to a patent's claims; the definiteness inquiry trains on the understanding of a skilled artisan at the time of the patent application, not that of a court viewing matters *post hoc*." *Nautilus*, 572 U.S. at 911. The Order identifies no intrinsic evidence that selects reading "(2)" or excludes readings "(1)" and "(3)," and Cellspin supplied none. The Order instead relies on the Court's own view of sensible system design and on Cellspin's attorney argument in the P.R. 4-3 Joint Statement. Order at 15 (citing Dkt. 43 at 11). Claims 1 and 16 recite "transferring the new data . . . along with a user identifier to the one or more web services." They do not recite "transferring the new data . . . along with [[~~a~~]] ***the*** user identifier ***for each service*** to [[~~the one or more~~]] ***that*** web service[[~~s~~]]," as the Order rewrites these claims. Choosing a reading to sustain these claims

requires such redrafting, and "courts may not redraft claims, whether to make them operable or to sustain their validity." *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004); *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1349 (Fed. Cir. 2002).

*Second*, the Order's conclusion that "a skilled artisan would read the claims in only one way" (Order at 14) has no record basis. The Order declined to determine the level of ordinary skill (*id.* at 8), and no party offered extrinsic evidence on this dispute.

*Third*, the Order and Cellspin's own positions leave unresolved how many "user identifiers" the claims actually involve, the very question that determines whether "***the*** user identifier" in claims 2 and 17 has a unique referent. The Order relied on "Cellspin's view of the claims' scope": that "the number of applicable identifiers therefore depends naturally on the selected destination services." Order at 15 (citing Dkt. 43 at 11). But Cellspin's reply incongruently argued that "[o]ne value may serve several destinations only if it identifies the particular user at each." Dkt. 62 at 6. Under the Order's chosen reading "(2)," three destination services requires three user identifiers; under Cellspin's "one value" sent to "several destinations" reading from its reply brief, one identifier may serve all three. The Order chose neither of these readings, and nothing in the intrinsic record informs that choice.

*Fourth*, the Order found that transferring "any one or more" of multiple identifiers to multiple services (per reading "(1)") "make[s] no sense." But that reading is rooted in Cellspin's insistence that "***a***" means "one or more" whenever used to introduce "***a*** user identifier." *See* Dkt. 48 at 10. The Order cited no intrinsic evidence for deeming a reading that tracks the patentee's own argument nonsensical, and a claim that allows more than one reasonable reading, with nothing in the intrinsic record to choose among them, does not provide reasonable certainty.

### C. The Order fails to resolve half of the disputed "user identifier" recitations.

The Order addresses only the recitations of "user identifier" within the "applying" and "transferring" steps of independent claims 1 and 16. Order at 14–15. It does not address:

- "the new data and user identifier" of the "receiving" step, Dkt. 54 at 15–16, 20–21;
- "***a*** user identifier" recited in the "receiving" step's wherein clause, *id.* at 16; or
- "***a particular*** user identifier" recited in the "making available" step. *Id.* at 15–17, 21; Dkt. 88-1 at 22–23.

The Court should resolve fundamental disputes the parties present about claim scope. *O2 Micro*, 521 F.3d at 1362. "***A <u>particular</u>*** user identifier" must add something to "***a*** user identifier"; if not, "particular" is improperly rendered "mere surplusage." Dkt. 54 at 21. Neither the Order nor Cellspin explains how the jury is to apply these recitations. *See* Dkt. 54 at 20–21; Dkt. 88-1 at 15–23; Dkt. 87 at 70:23–71:6.

### D. The Court should enter the parties' agreed constructions.

The Order does not enter the parties' agreed constructions (Dkt. 68 at 2–3), including "user identifier" ("data identifying a particular user") and "user information" ("information relating to a particular user"), which Fossil asked the Court to enter (Dkt. 54 at 5; *see* Dkt. 48 at 7). Fossil requests that the Court adopt the agreed constructions.

## III. CONCLUSION

Fossil respectfully requests that the Court sustain these objections, set aside the Order's holding that claims 1, 2, 16, and 17 of the '794 Patent are not indefinite, and hold those claims invalid as indefinite under 35 U.S.C. § 112. If the Court overrules these objections, Fossil requests that Cellspin be held to its concession that "the user identifier" in claims 2 and 17 refers to every user identifier applied under claims 1 and 16. Dkt. 87 at 77:2–5. Fossil also requests that the Court enter the parties' agreed constructions.

Dated: November 25, 2026

Respectfully submitted,

By: */s/ Bret T. Winterle*

Neil J. McNabnay
Texas Bar No. 24002583
mcnabnay@fr.com
David B. Conrad
Texas Bar No. 24049042
conrad@fr.com
Ricardo J. Bonilla
Texas Bar No. 24082704
rbonilla@fr.com
Bret T. Winterle
Texas Bar No. 24084249
winterle@fr.com
Noel F. Chakkalakal
Texas Bar No. 24053676
chakkalakal@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone (214) 747-5070
Facsimile (214) 747-2091

Nicholas H. Wang
Texas Bar No. 24137702
nwang@fr.com
**FISH & RICHARDSON P.C.**
111 Congress Avenue, Suite 2000
Austin, TX 78701
(512) 472-5070 – Telephone
(512) 320-8935 – Facsimile

Shelby E. Farrand
Texas Bar No. 24142883
farrand@fr.com
**FISH & RICHARDSON P.C.**
909 Fannin Street Suite 2100
Houston, TX 77010
(713) 654-5300 – Telephone
(713) 652-0109 - Facsimile

**COUNSEL FOR DEFENDANTS FOSSIL STORES I, INC., AND FOSSIL GROUP, INC.**

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the above and foregoing document has been served on November 25, 2026, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Bret T. Winterle*
Bret T. Winterle